# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| ROBERT J. GARLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:12-00121 |
| ) | Judge Sharp |
| FORD MOTOR COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Ford Motor Company's fully briefed Motion to Dismiss (Docket No. 18). That Motion will be denied.

## I. FACTUAL ALLEGATIONS

A simplified version of the pertinent allegations in the Complaint is as follows:

From June 1981 through October 2000, Plaintiff Robert J. Garland owned and operated Heritage Ford-Lincoln-Mercury, Inc. in Cookeville, Tennessee. He also owned the property upon which the dealership was located. In early 2000, Ford offered to purchase both the dealership and property through its Dealership Development Program ("DDP").

The DDP was designed to help undercapitalized individuals become Ford dealers. Under this program, Ford provided partial capitalization for potential new dealers, and helped fund their purchase of an existing dealership. As the new dealers became successful, they bought out Ford's interest, thereby gaining sole ownership of the dealership.

Plaintiff was approached by Tom Dorsey, DDP's Southeastern Regional Manager, and asked whether he was interested in selling his dealership to Ford so it could install a new minority

1

dealer. Plaintiff claims he was initially reluctant, but ultimately agreed to sell when Ford assured him that a dealership would remain on the property for at least fifteen years.

Pursuant to the DDP, Ford formed, and became the majority owner, of Cookeville Automotive, Inc., ("CAI"), along with Jamie Vergara, who initially held a minority ownership in CAI. In October 2000, Plaintiff sold his dealership and property to Ford.[1]

With regard to the underlying real estate, the parties agreed to a twenty year amortized pay-out that was calculated based upon the real estate value plus interest, and Plaintiff took a Deed of Trust to secure the indebtedness. Plaintiff claims that, because the debt was to be paid out over twenty years, it was critical that he be assured that, for at least fifteen years, a dealership would remain on the property, and Ford represented and agreed to that term, both verbally and by Letter Agreement dated October 1, 2000. Ford's agreement and assurance was allegedly made because it knew that Plaintiff would not have agreed to the sale without a guarantee of dealer occupancy and payment.

The sale closed on October 1, 2000, at which time, Plaintiff alleges, Ford and Plaintiff entered into a Non-Competition Agreement, a Letter Agreement, and other related documents concerning the sale. As of that time, Ford owed Plaintiff principal in the amount of $2,800,000, plus interest, along with a premium payment of $20,000 for each year that there remained any unpaid portion of the amount due. The payments (including interest and premiums) amounted to $26,500 per month.

Until late 2008, a dealership remained on the property, and the required monthly payment

---

[1] For purposes of this opinion, the Court refers to Ford and CAI collectively as "Ford" because Plaintiff's allegations are solely against Ford and he claims Ford controlled CAI. The actual relationship between Ford and CAI is something that will have to be fleshed out during discovery.

2

were made. However, in October 2008, Vergara filed for bankruptcy.

Between the closing of the sale in 2000 and the bankruptcy filing, only 95 of the 243 payments due were made. After the bankruptcy, Ford sold the dealership rights to a replacement dealer, but did not require the replacement dealer to lease the property for the remainder of the fifteen years. Instead, Ford allowed the replacement dealer to relocate to a new address.

On December 28, 2012, Plaintiff filed suit in this Court. He asserts claims for breach of contract, promissory estoppel, and unjust enrichment.

## II. STANDARD OF REVIEW

As a general rule, in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take "all well-pleaded material allegations of the pleadings" as true. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). The factual allegations in the complaint "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Id. (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009)). "'A legal conclusion couched as a factual allegation,'" however, "need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." Id. (quoting Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) and Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)). Further, in determining whether a complaint sets forth a plausible claim, a court may consider not only the allegations, but "may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." Ley v. Visteon Corp., 543 F.3d 801, 805 (6th Cir. 2008) (citation omitted).

3

## III. LEGAL ANALYSIS

Ford seeks dismissal on three grounds. First, Ford claims that, because the breach of contract claim is based upon an unsigned letter, the claim is barred by the Statute of Frauds. Second, Ford asserts that the breach of contract claim must be dismissed because the Letter Agreement was not signed and returned in accordance with its stated requirements. Third, Ford argues that Plaintiff's claims for promissory estoppel and unjust enrichment are barred by the applicable statute of limitations. In the context of a motion to dismiss, the Court finds none of these arguments persuasive.

Prior to addressing Ford's arguments, and to place some of the arguments in context, the Court notes that, at the hearing on the Motion to Dismiss, Plaintiff was directed to file additional briefing on the issue of whether Ford, as opposed to only CAI, was an integral part of the sales transaction, since that appeared to be a thread underlying many of Ford's arguments. In response, Plaintiff has submitted several documents related to the sale that are signed by Dorsey who, at the time, worked for Ford and was involved in the transaction. In addition, in response to Ford's motion, Plaintiff submitted an affidavit from Dorsey in which he states that he was Ford's primary representative in relation to the purchase of the dealership, that Ford promised that it would require any replacement dealer to occupy and make payments on the property, and that the parties' Letter Agreement memorialized that agreement. Moreover, when the allegations in the Complaint are construed in Plaintiff's favor, "and drawing all reasonable inferences in favor of the plaintiff, Logsdon v. Hains, 492 F.3d 334, 340 (6th Cir. 2007), the allegations suggest that CAI was created by Ford and, at least for some time, was controlled by Ford. As noted, whether that is in fact the case is something discovery will reveal.

4

A. **Statute of Frauds**

Defendant argues that "[t]he writing attached to the Complaint that allegedly forms the basis of the contract at issue is unsigned and thus fails to meet the requirement of Tennessee's Statute of Frauds." (Docket No. 19 at 4). The writing is the Letter Agreement. Although it is unsigned, the letter is written on Ford stationary with a Ford letterhead and contains signature spaces for both Plaintiff and L. W. Cumbelich, the Regional Sales Manager for Ford.

So far a relevant, the statute of frauds provides that "[n]o action shall be brought . . . [u]pon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party." Tenn. Code Ann. 29-2-101(a)(5). "The primary purpose of the Statute of Frauds is to reduce the risk of fraud and perjury associated with oral testimony." Waddle v. Elrod, 367 S.W.3d 217, 223 (Tenn. 2012). It "fosters certainty in transactions by ensuring that contract formation is not 'based upon loose statements or innuendoes long after witnesses have become unavailable or when memories of the precise agreement have been dimmed by the passage of time.'" Id. (citation omitted).

The Statute of Frauds is a general rule, subject to exceptions. "The most commonly recognized exception to the Statute of Frauds is the doctrine of part performance." Sweeney v. Tenney, 2011 WL 4506332 at *2 (Tenn. Ct. App. Sept. 29, 2011). "Under it, an otherwise enforceable oral contract can be the basis of an action if one of the parties has performed pursuant to the contract." Id. This is a "'purely equitable doctrine and is a judicial interpretation of the acts of the parties to prevent fraud.'" Id. (quoting, Buice v. Scruggs Equipment Co., 250 S.W.2d 44, 48

5

(1952)). "Whether or not there has been a part performance of [the] contract depends upon the particular facts of . . . each case.'" Schnider v. Carlisle Corp., 65 S.W.3d 619, 622 (Tenn. Ct. App. 2001) (citation omitted).

According to the allegations in the Complaint, the parties entered into the Letter Agreement and multiple other documents and, thereafter, Ford made payments (including payments for the property), and maintained a dealership on the property for many years. These allegations are sufficient to raise at least a plausible claim that the parties partly performed in accordance with the Letter Agreement.

Moreover, "[t]he statute of frauds . . . may be satisfied by multiple writings if (1) the party to be charged signed at least one of them, (2) the court can determine from the face of the writings that they are related, and (3) the court can determine with certainty the essential terms of the contract without the use of parol evidence." In re Estate of Price, 2005 WL 5139771 at *4 (Tenn. Ct. App. Nov. 28, 2005). "Thus, to satisfy the statute of frauds, a party may rely on multiple documents evidencing the same transaction, provided that the writings on their face relate to one another." Oliver v. Upton, 1998 WL 151388 at *3 (Tenn. Ct. App. April 3, 1998) (citation omitted). "It is not necessary that the party to be charged sign each paper writing forming a part of the agreement where the writing on their face relate to one another." Brandel v. Moore Mortgage and Inv. Co., 774 F.2d 600, 605 (Tenn. 1989).

Here, some of the documents relating to the sale of the dealership contain both the signature of both Plaintiff and Dorsey, and while the unsigned letter agreement contains no signature it references the "Ford Lincoln Mercury Sales Agreement with Heritage Ford-Lincoln-Mercury, Inc.," and the "Ford Lincoln Mercury Sales and Service Agreement with Heritage Ford-Lincoln-Mercury,

6

Inc." (Docket No. 1-1 at 1). It also states that "[i]t is our [Ford's] understanding that Bob Garland will make a twenty year mortgage to Cookeville Automotive, Inc. who will lease the mortgage property which is the Ford-Lincoln-Mercury facility," and that, if the sales agreement "is terminated for any reason, and the facilities are made available to our replacement dealers, we would required [sic], as a condition to execution of a Sales Agreement with the replacement dealer, that he/she lease the mortgaged facility during the remainder of the 15 year period for a rental equal to the debt service then payable[.]" (Id.).

The Court notes that the purpose of the Statue of Frauds is to reduce the risk of fraud and perjury yet Dorsey, who may in fact be Ford's agent, states in his affidavit that he was Ford's primary representative during the negotiations for the sale of the Heritage Ford dealership, that Ford persuaded Plaintiff to agree to put up 100% of the financing and accept payments over time, that, in exchange, Ford guaranteed that its dealer would continue to make payments for fifteen years, that Ford would require any replacement dealer to occupy the premises and make payments, that this agreement was critical to the sale, and that the Letter Agreement memorialized the agreement between the parties. While this affidavit constitutes parole evidence and is beyond the scope of that considered on a Motion to Dismiss, it does suggest that concerns address by the Statute of Frauds may not exist in this case.

**B. Acceptance**

Ford's letter to Plaintiff closed with the sentence, "Please indicate your agreement to this letter by signing and dating the copy and returning it to us." (Id.). Ford argues that because the Letter Agreement attached as Exhibit 1 to the Complaint is unsigned, there was no acceptance of Ford's alleged offer, and thus no contract.

7

There are two short answers to this argument. First, evidence pertaining to the acceptance of a contract may be by way of parole evidence. Hillard v. Franklin, 41 S.W.3d 106, 112 (Tenn. Ct. App. 2000); Bradley v. Pen Tax Corp., 1990 WL 33404 at *4 (Tenn. Ct. App. Mar. 28, 1990) ("evidence of the acceptance of the contract upon the part of the purchaser may be in parol as at common law before the statute of frauds").[2] Second, and probably as a corollary to the first answer, "[a]ny reasonable form of acceptance is binding" and "an unsigned contract may become binding if a party by his or her acts and conduct indicates assent to its terms." Jerry T. Beech Concrete Contractors, Inc. v. Larry Powell Builders, Inc., 2001 WL 487574 at * 2 (Tenn. Ct. App. May 9, 2001).

## C. Statute of Limitations

Under Tennessee law, breach of contract claims are generally governed by a six year statue of limitations, Tenn. Code Ann. § 28-3-105, while common law tort claims "for injuries to personal or real property" are governed by a three year statute of limitations, Tenn. Code. Ann. § 28-3-105. Ford seeks dismissal of the promissory estoppel and unjust enrichment claims because they were filed more than three years after Ford sold the dealership to a replacement dealer.

"To determine how the statute of limitations affects an action, courts must . . . look to the complaint and ascertain the gravamen of the complaint which serves as the basis for which damages are sought." Gafford v. Caruthers 1994 WL 420917 at *1 (Tenn.Ct.App. Aug, 12, 1994) (citing, Harvest Corp. v. Ernst & Whitney, 610 S.W.2d 727, 729 (Tenn. Ct. App. 1980)). While this is the

---

[2] The Court recognizes that this language generally refers to acceptance by the purchaser and Ford was the purchaser in this case. However, this principle of law appears applicable because, as the Court understands the argument, Ford is claiming that Plaintiff did not accept the terms of the letter agreement because he did not sign the letter and return it, and that is the "contract" alleged to not have been accepted.

8

general rule, it "is not as broad as to preclude the application of different statutes of limitations to different claims made in the same complaint." Bluff Springs Apartments, Ltd. v. Peoples Bank of the South, 2010 WL 2106210 at * 7 (Tenn. Ct. App. May 26, 2010).

In support of its argument that the three year statute of limitations applies, Ford relies upon Cumberland & Ohio Co. of Texas, Inc. v. First Am. Nat. Bank, 936 F.2d 846, 848 (6th Cir. 1991) wherein the Sixth Circuit stated that "[t]he three-year limitations period applies when a defendant has allegedly breached his contract, causing injury to the personal or real property of the plaintiff." It did so, however, based upon the gravamen of the complaint which was that a company suffered millions of dollars in losses due to a bank's "'financial pressures and arbitrary deadlines' [that] forced the Company to sell off valuable assets at deep discounts." Id. at 848. That is, "the gravamen of the action was an alleged economic injury to the Company when property was sold at a loss," and the Sixth Circuit "agree[d] with the Seventh Circuit that Tennessee's highest court would impose a three-year limitations period on such economic duress claims where the plaintiff seeks damages for alleged injuries to its property." Id. at 850; see, Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc., 342 S.W.3d 19, 31 (Tenn. Ct. App. 2010) (gravamen of the complaint in Cumberland was "economic duress").

Cumberland is inapposite. Here, the gravamen of the Complaint is that Ford breached its contractual promise to ensure that a dealer would remain at the facility for fifteen years. The promissory estoppel and unjust enrichment claims in this case are dependent upon the existence of that alleged contract, and the damages flow from the alleged breach of that contract. The Court finds the six year period to be applicable.

9

## IV. CONCLUSION

On the basis of the foregoing, the Court will enter an appropriate Order denying Ford's Motion to Dismiss.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

10